UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

  - against -

DARRYL BOARD,

                     Defendant.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

91-cr-1219 (DRH)
16-cv-3259 (DRH)

**FILED**
**CLERK**

10:43 am, Jun 09, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**HURLEY, Senior District Judge:**

**APPEARANCES**

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE**
**EASTERN DISTRICT OF NEW YORK**
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Margaret Schierberl, Esq.

**Darryl Board**, *pro se*

**FEDERAL DEFENDERS OF NEW YORK**
Attorneys for Defendant/Petitioner on the Motion to Vacate
One Pierrepont Plaza – 16th Floor
Brooklyn, NY 11201
By:    Dierdre D. von Dornum, Esq.
        Mildred M. Whelan, Esq.

**DOAR RIECK KALEY & MACK**
Attorneys for Defendant/Petitioner on the Motion for Compassionate Release
217 Broadway – 7th Floor
New York, NY 10007
By:    John F. Kaley, Esq.

## INTRODUCTION

Presently the before the Court are Defendant/Petitioner Darryl Board's

motions (i) to vacate, set aside or correct his sentence under 28 U.S.C. § 2255(a) and

*Johnson v. United States*, 135 S. Ct. 2551 (2015), and (ii) for compassionate release

or a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons stated below, Board's motion to vacate is denied and his motion for compassionate release is denied.

## BACKGROUND

Between May 1, 1991 and October 10, 1991, Darryl Board and his accomplices committed a series of bank and post office robberies in New York, often engaging in extremely threatening and brutal conduct.  (Presentence Investigation Report ¶ 9 ("PSR")).  In the course of doing so, Board threatened individuals at gunpoint, intimidated patrons to get  down to the floor, and used force against employees failing to comply with their demands.

On July 29, 1993, a three-month trial led a jury to convict Board of eight counts: conspiracy to commit bank and postal robbery, 18 U.S.C. § 371 (Count 1); postal robbery, 18 U.S.C. § 2114 (Count 2); use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1) (Count 3); armed bank robbery, 18 U.S.C. § 2113(a) (Counts 20 and 28); use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1) (Counts 21 and 29); receipt of stolen money, 18 U.S.C. § 2113(c) (Count 30).  On April 28, 1994, this Court sentenced him to 56 years and 8 months in prison, followed by 60 months of supervised release.  The Second Circuit affirmed Board's conviction and sentence on April 30, 1996.  *United States v. Williams*, 101 F.3d 683 (2d Cir. 1996), *cert. denied* 519 U.S. 900 (1996).

Board moved for leave to file the instant successive 28 U.S.C. § 2255 petition on June 16, 2016.  [DE 704].  The Second Circuit granted leave on March 15, 2021.

Motion Order at 2, *Board v. United States*, No. 16-2031 (2d Cir. Mar. 15, 2021) [ECF 48] ("*Board* Succ. Pet. Order").  The Federal Defenders filed a memorandum in support of Board on April 19, 2021, [DE 772], and the Government responded on May 19, 2021, [DE 779].

Board states that, on August 11, 2020, he handed his Case Manager a memorandum of law requesting the Warden of FCI Ray Brook, the facility in which he is detained, to move this Court to reduce his sentence.  (Email dated Sept. 23, 2020 [DE 747 at 27 of 135]; Mot. to Warden dated Aug. 5, 2020 [DE 28–52 of 135]).  On September 23, 2020, Board emailed the Warden that his thirty-day deadline to move on Board's behalf had expired and that Board would file his motion directly with the Court.  (Email dated Sept. 23, 2020).  Board filed his motion with this Court for on September 29, 2020, (Def. Comp. Rel. Mot. [DE 747 at 1–26]), the Government responded on December 18, 2021, (Gov't Comp. Rel. Resp. [DE 755]), and appointed counsel for Board replied on July 1, 2021, (Def. Comp. Rel. Reply [787]).

## DISCUSSION

The Court first addresses Board's (I) motion to vacate, followed by his (II) motion for compassionate release.

## I.   Motion to Vacate

Board's successive § 2255 petition moves the Court to vacate his three § 924(c) convictions, for which he was sentenced to 60 months, 240 months, and 240 months imprisonment under Counts 3, 21, and 29, respectively, alleging they are unconstitutional.  Specifically, he argues that the predicate offenses—one for postal

robbery and two for bank robbery—are not "crimes of violence," in that they do not require physical force necessary under § 924(c)(3)(A)'s "Elements Clause" and that the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), held § 924(c)(3)(B)'s "Residual Clause" void for vagueness.

The Court begins its analysis by explaining the steps necessary to assess the constitutionality of Board's § 924(c) convictions. Then, it applies those steps first to the § 924(c) conviction predicated on postal robbery and second to the two § 924(c) convictions predicated on bank robbery.

### A.      Divisibility of Section 924(c) "Crime of Violence" Enhancement

Section 924(c) of the Armed Career Criminal Act of 1984 ("ACCA") mandates an enhanced sentenced for a defendant using or carrying a firearm during, or possessing a firearm in furtherance of, a "crime of violence," defined as:

> an offense that is a felony and
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Following *United States v. Davis*, § 924(c)'s enhancements trigger only from offenses fitting the criteria in Subsection (A), the "Elements Clause." 139 S. Ct. 2319 (2019) (holding Subsection (B), the "Residual Clause," unconstitutionally vague). Accordingly, a felony "offense is a crime of violence, for ACCA purposes, [only] if it has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *United States v.*

*Figueroa*, 2021 WL 1191615, at *5 (S.D.N.Y. Mar. 30, 2021) (internal quotation marks omitted). "Physical force" in this context connotes "violent force" or "force capable of causing physical pain or injury." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

To assess whether the predicate offenses underlying Board's § 924(c) convictions are "crimes of violence," the Court must identify their elements. That entails analyzing the extent to which the predicate offense statutes are divisible. An indivisible statute "creates only a single crime," even if it "spells out various factual ways of committing some component of the offense"; a divisible statute lists its elements "in the alternative and, in doing so, creates a separate crime associated with each alternative element." *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

To determine whether an indivisible statute's elements reflect a "crime of violence," courts take a "categorical approach." *Id.* Under this approach, the court "identif[ies] 'the minimum criminal conduct necessary for conviction'" under the statute by analyzing "how the law defines the [predicate] offense" and not "how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008); *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (quoting *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam)). If "reality, logic, and precedent" illustrate "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence," then § 924(c) does not apply. *Id.* at 56 (quoting

*Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)).  Otherwise, the predicate offense reflects a crime of violence, and § 924(c) applies.

To determine whether a divisible statute's elements reflect a "crime of violence," courts take a "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 260 (2013).  Because divisible statutes create separate crimes, a court first "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine" which of the divisible statute's "crime[s], with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249.  Once determined, a court applies the categorical approach to that crime. *Id.*

### B.    Postal Robbery

Board contends 18 U.S.C. § 2114(a)[1] bank robbery does not "qualify as a crime of violence under the [Elements Clause] of § 924(c)(3)(A)" because it does not necessarily require "either the presence of violent physical force or the intentional employment of such force."  Mot. to Vacate at 5 [DE 704].  Section 2114(a) reads:

> A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other

---

[1]    Despite Board addressing the postal robbery statute in its entirety, *i.e.*, "18 U.S.C. § 2114," he was convicted under § 2114(a) and the Court's analysis reaches no further than that subsection, *see* Judgment [DE 364]; *see also Board* Succ. Pet. Order ("For the purposes of this proceeding, the applicable versions of § 2113 and § 2114 are those under which petitioner was convicted.").

> property of the United States, or puts his life in jeopardy by the use of a
> dangerous weapon, or for a subsequent offense, shall be imprisoned not
> more than twenty-five years.

18 U.S.C. § 2114(a).

Section 2114(a) is properly classified as a divisible statute because "it lists multiple elements disjunctively." *Pannell v. United States*, 2021 WL 3782729, at *4 (E.D.N.Y. Aug. 26, 2021); *see United States v. Enoch*, 865 F.3d 575, 580 (7th Cir. 2017). Section 2114 criminalizes "at least two separate offenses" – (i) non-aggravated postal robbery and (ii) aggravated postal robbery. *Board* Succ. Pet. Order at 2. The list of aggravated offenses is divisible too: (a) wounding the mail carrier in the course of the robbery or attempted robbery; (b) using a dangerous weapon to put the mail carrier's life in jeopardy in the course of the robbery or attempted robbery; or (c) committing a subsequent offense. *Williams v. United States*, 794 Fed. App'x 612, 614 (9th Cir. 2019). By listing the three as alternatives, they are not "illustrative examples" of "a crime's means of commission" but rather elements of separate crimes. 18 U.S.C. § 2114(a); *Mathis*, 136 S. Ct. at 2256; *e.g.*, *Pannell*, 2021 WL 3782729, at *4 ("Because it lists three elements in the alternative, thereby defining multiple crimes, I find that the aggravated offense is further divisible.").

The modified categorical approach is therefore necessary to determine whether the jury convicted Board of non-aggravated or aggravated postal conviction, and, if the latter, which type. To that end, the Court relies on the superseding indictment and the jury instructions. Superseding Indictment, No. 91-cr-1219 (E.D.N.Y. June 8, 1992) [DE 60] ("Superseding Indictment"); Jury Instructions, Ex. A [DE 1-2] to Petition [DE 1], *Board v. Smith*, No. 04-966 (M.D. Pa. May 3, 2004) ("Jury

Instructions").[2]  The Superseding Indictment charged Petitioner with, among other crimes, "knowingly and willfully rob[bing]" postal workers and, in doing so, "put[ting] in jeopardy the lives of" said workers "by use of a dangerous weapon."  Superseding Indictment at 7–8 (Count 2).   At trial, this Court instructed the jury on the prosecution's burden to prove postal robbery as requiring:

> First:  That the defendant under consideration or an accomplice took mail matter, money or other property of the United States from someone who was in lawful custody or control of the money or property;
>
> Second:  That the taking was done by "robbery," that is, by force, violence or intimidation;
>
> Third:  That in the carrying out the robbery, the defendant under consideration or an accomplice put in jeopardy by use of a dangerous weapon the life of the person or persons having control of the mail matter, money or property; and
>
> Fourth:  That the defendant under consideration acted knowingly and wilfully.

Jury Instructions at 6–12.  A "dangerous weapon," according to the jury instructions, "includes anything capable of being used to inflict serious bodily harm upon another person."  *Id.*  The jury convicted Board of postal robbery and, in doing so, putting a mail carrier's life in jeopardy by use of a weapon capable of inflicting serious bodily harm, *i.e.*, aggravated postal robbery.  Specifically, the jury convicted Board of "life in jeopardy" aggravated postal robbery.  *See* Superseding Indictment at 7–8; Jury Instructions at 6–12.

---

[2]   No party has raised "any issues regarding th[e] script" of jury instructions docketed in Petitioner's prior action in Pennsylvania."  *Board* Succ. Pet. Order at 1 n.*.

The next step is to analyze whether the minimum conduct satisfying "life in jeopardy" aggravated postal robbery is a "crime of violence" under § 924(c)'s Elements Clause.  Specifically, whether there is a realistic probability that a robbery putting a life in jeopardy by the use of a weapon capable of inflicting serious bodily harm can be accomplished without "'the use, attempted use, or threatened use of physical force.'"  *Board* Succ. Pet. Order at 2 (quoting 18 U.S.C. § 924(c)(3)(A)).  It cannot. Better stated: to commit a robbery that puts a life in jeopardy by using a weapon capable of inflicting serious bodily harm requires, at a minimum, the use, attempted use, or threatened use of physical force.

The Court takes each relevant element in turn: (1) robbery; (2) putting a life in jeopardy; (3) using a dangerous weapon.  The first, robbery, "has always been within the 'category of violent, active crimes' that Congress included in ACCA."  *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (quoting *Johnson*, 559 U.S. at 140); *Pannell*, 2021 WL 3782729, at *4 ("After *Stokeling* . . . there can be no doubt that armed postal robbery under § 2114(a) qualifies as a predicate crime of violence under § 924(c).").  The second, life in jeopardy, "refers to 'an objective state of danger, not to a subjective feeling of fear,'" *Pannell*, 2021 WL 3782729, at *4 (quoting *United States v. Donovan*, 242 F.2d 61, 63 (2d Cir. 1957)), which calls for the presence of force "capable of causing injury to another person," *United States v. Enoch*, 865 F.3d 575, 581 (7th Cir. 2017) ("There can be no doubt that . . . putting the life of a victim in jeopardy is a violent crime.").  The third, use of dangerous weapon, viz. use of a weapon capable of inflicting serious bodily harm, likewise involves the use, attempted use, or threatened use of

"force capable of causing physical pain or injury." *See Johnson*, 559 U.S. at 140.  In conclusion, then, the minimum conduct sufficient to satisfy § 2114(a)'s "life in jeopardy" aggravated postal robbery is a crime of violence.

This holding aligns with those of the three Circuit courts already confronted with the issue. *Knight v. United States*, 936 F.3d 495, 500–01 (6th Cir. 2019) (holding the "use of a dangerous weapon to put the victim's life in jeopardy transforms" the minimum force required "into violent physical force"); *United States v. Enoch*, 865 F.3d 575, 582 (7th Cir. 2017); *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016).  It further aligns with that of many district courts in this Circuit. *E.g.*, *Pannell*, 2021 WL 3782729, at *4–6; *United States v. Lloyd*, 2020 WL 4750241, at *8–9 (E.D.N.Y. Aug. 17, 2020); *McCullough v. United States*, 2020 WL 869118, at *4 (E.D.N.Y. Feb. 21, 2020).

The Seventh Circuit's decision in *United States v. Rodriguez* does not command a different holding. *See Board* Succ. Pet. Order at 2 (discussing *Rodriguez*, 925 F.2d 1049, 1052–53 (7th Cir. 1991).  The *Rodriguez* Court held that "a person's life may be put in jeopardy for purposes of § 2114 by the carrying of a gun that remains concealed in a pocket." *Board* Succ. Pet. Order at 2.  The Seventh Circuit in *Enoch* later narrowed *Rodriguez*'s holding: "[I]t is beyond question that a robbery that puts a person's life in jeopardy by the use of a dangerous weapon is a violent crime under the [*Johnson*] definition and section 924(a)." 865 F.3d at 582 (internal quotation marks omitted).  To the extent Seventh Circuit decisions are persuasive to district

courts in the Second Circuit, *Enoch* better fits the instant question before the Court and aligns with this Court's holding.

As a result of the foregoing analysis, Board's § 924(c)(3)(A) conviction under Count 3, grounded in a § 2114(a)'s "life in jeopardy" aggravated postal robbery predicate conviction, is not subject to vacatur under the holding in in *United States v. Davis*, 139 S. Ct. 2319 (2019).  Board's motion to vacate is denied with respect to the § 924(c) conviction predicated on post office robbery.

### C.     Bank Robbery

According to Board, the 18 U.S.C. § 2113(a)[3] bank robbery too does not "qualify as a crime of violence under the [Elements Clause] of § 924(c)(3)(A)" because it does not necessarily require "either the presence of violent physical force or the intentional employment of such force."  Mot. to Vacate at 5.

In *United States v. Hendricks*, however, the Second Circuit held the opposite: Federal bank robbery "categorically constitutes a crime of violence" under § 924(c)(1)(A)'s Elements Clause.  921 F.3d 320, 328 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 870 (2020).  Therefore, the sentence imposed pursuant to Board's conviction under two § 924(c) offenses predicated upon two § 2113(a) bank robbery offenses is not subject to vacatur under the holding in in *United States v. Davis*, 139 S. Ct. 2319 (2019).  Accordingly, Board's motion to vacate is denied with respect to the § 924(c) conviction predicated on bank robbery; it is therefore denied in its entirety.

---

[3]     The Court limits its analysis to § 2113(a), under which Petitioner was twice convicted, notwithstanding his motion papers discussing statute in its entirety, *i.e.*, "18 U.S.C. § 2113."  *See* Judgment, No. 91-cr-1219 (E.D.N.Y. Apr. 29, 1994) [DE 364].

## II.     Motion for Compassionate Release/Sentence Reduction

"A court may not modify a term of imprisonment once it has been imposed

except pursuant to statute." *United States v. Rabuffo*, 2020 WL 2523053, at *1

(E.D.N.Y. May 14, 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 614

(S.D.N.Y. 2020)).   Under 18 U.S.C. § 3582(c), as amended by the First Step Act,

criminal defendants may move a federal sentencing court to modify an imposed term

of imprisonment.  To qualify, the defendant must show that:

(1)     he "has fully exhausted all administrative rights to appeal a
failure of the Bureau of Prisons to bring a motion on [his] behalf,"
or that thirty days have lapsed "from the receipt of such a request
by the warden of [his] facility, whichever is earlier";

(2)     "extraordinary and compelling reasons warrant" a reduction in
the term of imprisonment;

(3)     these reasons outweigh "the factors set forth in [18 U.S.C.
§ 3553(a)] to the extent that they are applicable"; and

(4)     that a sentence reduction "is consistent with applicable policy
statements issued by the Sentencing Commission."[4]

*See United States v. Reid*, 2021 WL 837321, at *3 (E.D.N.Y. Mar. 5, 2021) (internal

quotation marks omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The defendant bears the burden of showing that the circumstances justify a

sentence reduction.  *United States v. Patterson*, 2020 WL 3451542, at *1 (S.D.N.Y.

---

[4]     "A sentence reduction is consistent with the Sentencing Commission's policy
statements if '[t]he defendant is not a danger to the safety of any other person or to
the community, as provided in 18 U.S.C. § 3142(g).  The § 3142(g) factors are largely
duplicative of those in § 3553(a), but they also include 'whether the offense is a crime
of violence" and "the weight of the evidence against the [defendant].'"  *Reid*, 2021 WL
837321, at *3 (internal citations omitted) (quoting 18 U.S.C. §§ 3142(g),
3582(c)(1)(A)(ii).

June 23, 2020). Even if, however, "a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Qadar*, 2021 WL 3087956, at *6 (E.D.N.Y. July 22, 2021) (quoting *United States v. Cato*, 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020)).

The Court's analysis is limited to the first statutory requirement: exhaustion of administrative rights to appeal.

"Section 3582(c)(1)(A) imposes a 'statutory exhaustion requirement' that 'must be strictly enforced'" when properly invoked. *United States v. Perez*, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). It is a mandatory claim-processing rule, meaning it is not jurisdictional and is subject to waiver and forfeiture. *Id.*; *United States v. Haney*, 454 F. Supp. 3d 316, 320–22 (S.D.N.Y. 2020); *see Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017). The Government invokes the requirement, contending Board failed to "fully exhaust all administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf" or wait thirty days "from the receipt of such a request by the warden of [his] facility." Gov't Comp. Rel. Resp. at 5. Board's states the Warden of FCI Ray Brook failed to take any action within thirty days of receipt of Board's request that the Warden bring a motion on his behalf. Def. Comp. Rel. Mot. at 14.

Board's submission includes a copy of his August 5, 2020 twenty-four-page motion to reduce sentence addressed to Warden Lovett of FCI Ray Brook. *See* Mot. to Warden. Board also attaches his September 23, 2020 email to the Warden, in which Board writes that he handed his Case Manager his motion on August 11, 2020.

*See* Email dated Sept. 23, 2020.  According to Board's email, the Case Manager informed him that he would hear from the Warden in two weeks and that the Case Manager would "aid [the Warden] in answering [Board's] motion."  *Id.*  Board finishes by noting that he has not "heard nor received any legal mail from" the Warden since and that 18 U.S.C. § 3582(c)(1)(A)(i)'s "30 day statutory requirement has passed."  *Id.*[5] The Government counters that the BOP Case Management Coordinator "represented to the [G]overnment" on two occasions—December 7 and December 18, 2020—that "she has not received a request for a reduction in sentence or compassionate relief from [Board] to date."  Gov't Comp. Rel. Resp. at 5.  Each parties' representations come without sworn affidavits averring to their accuracy.

Faced with such contradictory unsworn statements, the Court finds that Board has failed to carry his burden in adducing sufficient proof that he exhausted all administrative rights to appeal.  *See* 18 U.S.C. § 3582(c)(1)(A).  In particular, Board has adduced no evidence that the Warden of FCI Ray Brook received Board's request. The absence of this evidence is fatal to a petitioner's motion for compassionate release.  *E.g.*, *United States v. Ware*, 2021 WL 1662497, at *2 (N.D. Tex. Apr. 28, 2021) ("[S]ubmission of a request is insufficient for exhaustion.  Rather, exhaustion

---

[5]    Board's reply papers include emails from January 2021, reflecting Board's further efforts to get the Warden to acknowledge receipt of the motion back in August 2020. Ex. 1 to Def. Comp. Rel. Reply.  Board sent these January 2021 emails after the Government's response memorandum indicated the BOP Case Management Coordinator could not find proof that Board filed a motion with the Warden.  In these emails, Board insists that he sent the motion, and the Warden and his Unit Manager fail to affirm receipt – that is, these January 2021 emails align with the parties' positions set out in their earlier-filed briefing.

requires proof that the warden *received* the defendant's request." (emphasis in original)); *United States v. Rios*, 2020 WL 6343038 (E.D. Cal. Oct. 29, 2020); *United States v. Knox*, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020); *United States v. Posey*, 2020 WL 3103850 (W.D. Wash. June 11, 2020).

Accordingly, Board's motion for compassionate release is denied without prejudice to renew upon submission of evidence that he exhausted all administrative rights to appeal.

## CONCLUSION

For the reasons discussed above, Board's motion to vacate is denied. Both of Board's postal robbery and bank robbery convictions are crimes of violence and therefore his 18 U.S.C. § 924(c) convictions are not unconstitutional.

His motion for compassionate release is denied, without prejudice to renew, for failure to exhaust all administrative rights to appeal.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
      June 9, 2022                         Denis R. Hurley
                                           United States District Judge